UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CENTRAL NEW YORK FAIR BUSINESS
ASSOCIATION, CITIZENS EQUAL RIGHTS
ALLIANCE, DAVID R. TOWNSEND, New York
Assemblyman, MICHAEL J. HENNESSY, Oneida
County Legislator, D. CHAD DAVIS, Oneida County
Legislator, and MELVIN PHILLIPS,

                              Plaintiffs,

        v.                                                          6:08-CV-660 (LEK/DEP)

KENNETH SALAZAR, individually and in his official
capacity as Secretary of the U.S. Department of the
Interior, P. LYNN SCARLETT, in her official capacity
as Deputy Secretary of the U.S. Department of the Interior,
JAMES E. CASON, in his official capacity as the
Associate Deputy Secretary of the Interior, FRANKLIN
KEEL, Regional Director for the Eastern Regional Office
of the Bureau of Indian Affairs, JAMES KARDATZKE,
Eastern Regional Environmental Scientist, and ARTHUR
RAYMOND HALBRITTER, as a real party in interest as
the Federally Recognized Leader of the Oneida Indian Nation.

                              Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Presently before the Court are Motions to dismiss certain claims (Dkt. No. 21), as they

appear in this action's initial Complaint (Dkt. No. 1); to dismiss claims (Dkt. No. 67), as they

appear in the Amended Complaint; and to dismiss the Complaints as against a particular Defendant

(Dkt. Nos. 23, 63).  The Court shall address these Motions in turn.

1

## II.    BACKGROUND[1]

The instant action arises from a May 20, 2008 decision by the Department of Interior

("DOI") to accept into trust approximately 13,000 acres of land for the Oneida Indian Nation of

New York ("OIN").  Following that final decision, Plaintiffs brought a variety of challenges to the

DOI's decision.  The Plaintiff group is comprised of several entities and persons: the Central New

York Fair Business Association ("CNYFBA") and the Citizens Equal Rights Alliances ("CERA"),

both concerned citizens groups; David Townsend, a New York State Assemblyman; Michael

Hennessy and D. Chad Davis, both Oneida County Legislators; and Melvin Phillips.  Plaintiffs

Townsend, Davis and Hennessy purport to sue in both their individual and official capacities.

Plaintiff Phillips purports to sue both in an individual capacity and as the "official spokesperson for

the Orchard Party/Marble Hill Oneidas."  Dkt. No. 40 at 8.  The named Defendants are: Kenneth

Salazar, Secretary of the Department of Interior; P. Lynn Scarlett, Deputy Secretary of the

Department of Interior; James Cason, Deputy Secretary of the Interior; Franklin Keel, Regional

Director for the Eastern Regional Office of the Bureau of Indian Affairs; James Kardatzke, an

environmental scientist in the Eastern Region of the nited States; and Arthur Raymond Halbritter, as

"a real party in interest as the Federally Recognized Leader of the Oneida Indian Nation."

---

[1]The above-captioned case is one of several filed in this Court by different plaintiffs raising challenges to various aspects of the DOI's May 20, 2008 Record of Decision. See 5:08-CV-633; 6:08-CV-644; 5:08-CV-648; 5:08-CV-649; 6:08-CV-647. These cases represent only the latest chapter in a long saga of litigation involving the OIN's land claims in New York. For a more detailed historical background of the OIN and this litigation, see, e.g., the Supreme Court's opinion in City of Sherrill, New York v. Oneida Indian Nation of New York, 544 U.S. 197 (2005); the Second Circuit's opinion in Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139 (2d Cir. 2003) (reversed by the Supreme Court in Sherrill); or this Court's opinions in New York v. Salazar, No. 6:08-CV-644, 2009 U.S. Dist. LEXIS 90071 (N.Y.N.D. Sept. 29, 2009), Oneida Indian Nation of New York v. New York, 500 F. Supp. 2d 128 (N.D.N.Y. 2007), and Oneida Indian Nation of New York v. New York, 194 F. Supp. 2d 104 (N.D.N.Y. 2002).

Defendant Salazar is sued in both his individual and official capacity, while Defendants Scarlett and

Cason are sued only in their official capacities.

Plaintiffs' Complaint was filed on June 21, 2008. Defendants moved for partial dismissal,

arguing against the validity of seven claims. Dkt. No. 21. Additionally, Defendants sought the

dismissal of Defendant Halbritter as a party to the case. Dkt. No. 23. Subsequent to a stipulation by

the parties, and with the Court's approval, several Plaintiffs submitted an Amended Complaint on

May 8, 2009, the thrust of which challenges a December 30, 2008 transfer of approximately 18

acres of land from the General Services Administration to the DOI to be held in trust for the OIN.

Dkt. No. 58. Because not all Plaintiffs joined the Amended Complaint, it does not supercede the

Complaint, and both filings are active before the Court. Accordingly, Defendants' Motions with

respect to the Complaint shall be presently addressed, along with Defendants' more recent Motions

for dismissal of claims in the Amended Complaint and for dismissal of Defendant Halbritter as a

party named in the Amended Complaint.

A vast and complicated historical record informs the factual background of the instant

action. As the Supreme Court stated, the "OIN is a federally recognized Indian Tribe and a direct

descendant of the Oneida Indian Nation (Oneida Nation), 'one of the six nations of the Iroquois, the

most powerful Indian Tribe in the Northeast at the time of the American Revolution'" City of

Sherrill v. Oneida Indian Nation of New York, 544 U.S. 197, 203 (2005), though its population,

land holdings and status have fluctuated significantly since that time. See id. at 203-210 (discussing

the series of treaties and relations between Oneida Indians and federal and state governments from

the Colonial Era until the present, including related litigation efforts).

In the context of Plaintiffs' action, it is unnecessary for this Court to broadly recount

developments in federal policy towards the land and status of the Oneidas of New York, other than to note that Congress eventually, through enactment of the Indian Reorganization Act ("IRA") in 1934, "provided a mechanism for the acquisition of lands for tribal communities that takes account of the interests of others with stakes in the area's governance and well-being"  Id. at 220; 25 U.S.C. § 465.  With the objective of increasing the self-government of Indian tribes, both in political and economic affairs, the IRA authorized the Secretary of the Interior ("the Secretary"), following consideration of relevant interests, to take land into trust for Indian tribes, such that the land would become exempt from local and state taxation.  See Morton v. Mancari, 417 U.S. 535, 542 (1942); Sherrill, 544 U.S. at 220-221.  The land-into-trust action challenged by Plaintiffs' initial Complaint was undertaken on this basis, pursuant to § 465 of the IRA.

After Sherrill, in which the Court held that § 465 "provides the proper avenue for OIN to reestablish sovereign authority over territory last held by the Oneidas 200 years ago," the OIN sought to have the Secretary of the Interior take approximately 17,300 acres of land in New York State into trust under that section.  Sherrill, 544 U.S. at 221.  Pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., the DOI issued a draft Environmental Impact Statement ("EIS") regarding the proposed fee-to-trust request on November 24, 2006.  Public comments were solicited until February 22, 2007, and the DOI issued its final EIS on February 22, 2008.  Finally, on May 20, 2008, the DOI accepted approximately 13,000 acres into trust for the OIN.  Plaintiffs' suit was filed a month later, on June 21, 2008.

In a separate action, and under a separate provision of the United States Code, 40 U.S.C. § 523(b)(1), the DOI acknowledged custody of an approximately 18 acre parcel of land in trust for the use and benefit of the OIN, which was transferred by the General Services Administration in a May

28, 2002 letter after having been classified as excess federal land within the boundaries of an Indian reservation.  By § 523, Congress directed that "[t]he Administrator of General Services shall prescribe procedures necessary to transfer to the Secretary of the Interior, without compensation, excess real property located within the reservation of any group, band, or tribe of Indians that is recognized as eligible for services by the Bureau of Indian Affairs" and that "the Secretary shall hold excess real property transferred under this section in trust for the benefit and use of the group, band, or tribe of Indians, within whose reservation the excess real property is located."  40 U.S.C. § 523(a), (b).  The 18 acre parcel was used by the United States as part of the Verona Test Site, an annex to the Griffiss Air Force Base.  The Air Force vacated the Verona Test Site in 1996 and, on January 23, 2001, issued a Report of Excess Real Property for the parcel contained on the Site.  After receiving notice from the DOI that the parcel lay within the boundaries the OIN's reservation circa 1794, set by the Treaty of Canandaigua, the GSA made the transfer, which the DOI formally acknowledged on December 30, 2008.  Plaintiffs' Amended Complaint, filed on May 8, 2009, challenges this action.


## III.  DISCUSSION

### A.  Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party

as true and "draw all inferences in the light most favorable" to the non-moving party.  In re NYSE

Specialists Sec, Litig,, 503 F.3d 89, 95 (2d Cir. 2007).  "The movant's burden is very substantial, as

'[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is

entitled to offer evidence to support the claims.'"  Log On America, Inc. v. Promethean Asset

Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of

Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and citations omitted)).  Pursuant to

Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter

jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).  "A

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists."  Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d

Cir. 1996)).  In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court "'must

accept as true all material facts alleged in the complaint and draw all reasonable inferences in the

plaintiff's favor.'"  Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting Merritt v.

Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001)).  A defendant's challenge to a plaintiff's

constitutional standing to sue is properly brought under Rule 12(b)(1).  See Alliance for

Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 n.6 (2d Cir. 2006)

("Although we have noted that standing challenges have sometimes been brought under Rule

12(b)(6), as well as Rule 12(b)(1) . . . the proper procedural route is a motion under Rule 12(b)(1).")

(internal citations omitted).


**B.  Motion to Dismiss Claims in Initial Complaint**

*i. Tenth Amendment Claim*

Plaintiffs' second claim for relief in their initial Complaint asserts that the fee-into-trust action of the DOI violates the Tenth Amendment of the United States Constitution.  Specifically, Plaintiffs contend that application of the IRA's provisions to land in New York State, and with respect to the OIN, unconstitutionally encroaches on state sovereignty and is not a proper exercise of authority under the Indian Commere Clause.  Plaintiffs' Tenth Amendment claim must be dismissed, however, as there is no question that Section 465 represents a valid exercise of congressional authority pursuant to the Indian Commerce Clause, and as such there is no possibility of a Tenth Amendment violation.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.  "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."  New York v. United States, 505 U.S. 144, 156 (1992) (citations omitted).  The Indian Commerce Clause expressly gives to Congress the power "[t]o regulate commerce . . . with the Indian tribes[.]"  U.S. Const. art. I, § 8, cl. 3.  It is well-settled that this power affords plenary legislative authority in Indian affairs.  See, e.g., United States v. Lara, 541 U.S. 193, 200 (2004) (describing Congress' powers to legislate in respect to Indian matters as "plenary and exclusive"); South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."); Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192 (1989) ("[T]he central

7

function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs[.]") (citing <u>Morton</u>, 417 U.S. at 551-52). "With the adoption of the Constitution, Indian relations became the exclusive province of federal law." <u>County of Oneida v. Oneida Indian Nation of New York</u>, 470 U.S. 226, 234 (1985).

It is incontrovertible, then, that the Indian Commerce Clause has received an expansive interpretation by the Supreme Court. The Secretary of the Interior's determination to take the contested land into trust for the OIN pursuant to Section 465 clearly fits within the broad scope of authority provided by the Clause. The Tenth Amendment is simply not implicated by the DOI's action under that section of the IRA because the Secretary's authority to take the land into trust for Indians is derived from powers delegated to Congress in Article I. <u>See</u> <u>New York</u>, 505 U.S. at 156. Accordingly, Plaintiffs' second claim for relief is dismissed.


*ii. Non-delegation Claim*

Defendants seek to dismiss those portions of Plaintiffs' Complaint that challenge § 465 of the IRA, and the Secretary's trust determination pursuant to that section, as an unconstitutional delegation of legislative authority. Plaintiffs argue that the Secretary's fee-into-trust land determination was made in excess of the authority actually delegated in the statute. It appears that Plaintiffs' first claim for relief contains this argument, among others. The thrust of Plaintiffs' argument is that the text of the statute, by authorizing an annual federal expenditure of two million dollars to purchase land to be taken in trust, expressed the intent that only lands obtained through that limited expenditure, as opposed to lands owned in fee or land available through any other means, could become trust lands under the statute. Based on this premise, Plaintiffs conclude that §

465 has no limiting principle.  Complaint at 17 ("Without the appropriative restriction of Section 5 of the IRA, the asserted authority of the Secretary of the Interior to accept lands into federal trust status as currently defined in 25 C.F.R. § 151.3 is unlimited.").  Such a challenge to the Secretary's trust determination under the provisions of the IRA must be rejected as contrary to the text of IRA and without a basis in law.

Article I, § 1, of the Constitution vests "all legislative powers herein granted . . . in a Congress of the United States." U.S. CONST. art. I, § 1.  Accordingly, Congress "is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is vested." Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935); see also Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 472 (2001); Mistretta v. United States, 488 U.S. 361, 371 (1989) ("The non-delegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government.").  However, the Supreme Court has recognized that "Congress simply cannot do its job absent an ability to delegate power under broad general directives" and therefore Congress may confer decision making authority on agencies.  Mistretta, 488 U.S. at 372. "[W]hen Congress confers decision-making authority upon agencies, Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to perform.'" Whitman, 531 U.S. at 472 (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)).  The Supreme Court "has deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" Mistretta, 488 U.S. at 372-73 (quoting Am. Power & Light Co. v. SEC, 328 U.S. 90, 105 (1946)).  Indeed, the Court has stated that it has "almost never felt qualified to second-guess Congress regarding permissible degrees of policy judgment that can be left to those executing

9

or applying the law."  Whitman, 531 U.S. at 474-75.

Every court to consider a delegation challenge to § 465 has rejected it and found that agency regulations sufficiently limit the Secretary of the Interior's discretion.  See, e.g., Michigan Gaming Opposition v. Kempthorne, 525 F.3d 23, 33 (D.C. Cir. 2008); Carcieri v. Norton, 497 F.3d 15, 43 (1st Cir. 2007) (en banc), rev'd on other grounds sub nom. Carcieri v. Salazar, ___ U.S. ___, 129 S. Ct. 1058 (2009); South Dakota v. United States Dep't of Interior, 423 F.3d 790, 799 (8th Cir. 2005) ("South Dakota II");[2] United States v. Roberts, 185 F.3d 1125, 1137 (10th Cir. 1999); Shivwitz Band v. Utah, 428 F.3d 966, 972-74 (10th Cir. 2005); Nevada v. United States, 221 F. Supp. 2d 1241, 1250-51 (D. Nev. 2002).

Review of the IRA makes clear why it does not involve an unconstitutional delegation of legislative authority.  The statutory preamble describes the IRA as "[a]n Act to conserve and develop Indian lands and resources."  48 Stat. 984 (1934).  Thus, "an intelligible principle exists in the statutory phrase 'for the purpose of providing land for Indians' when it is viewed in the statutory and historical context of the IRA."  Michigan Gaming Opposition, 525 F.3d at 31 (quoting 25 U.S.C. § 465).  "This principle involves providing lands sufficient to enable Indians to achieve self-support and ameliorating the damage resulting from . . . prior federal policy."  Id. (internal citations and quotations omitted).  Therefore, this Court, consistent with those federal courts to have considered the question, finds no impermissible delegation of legislative authority within the statute.

Plaintiffs contend, nonetheless, that an unconstitutional delegation occurs because the statute

---

[2]In South Dakota v. United States Dep't of Interiors, 69 F.3d 878 (8th Cir. 1995), the Eighth Circuit held that Section 465 was an unconstitutional delegation of legislative power because "providing land for Indians" did not provide an intelligible standard.  However, the Eighth Circuit reversed its holding en banc in South Dakota II.

permits the Secretary to take land into trust that was not strictly purchased with the two million

dollars in federal funds allocated for precisely that purpose. The relevant portion of the statute

provides:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.
>
> For the acquisition of such lands, interests in lands, water rights, and surface rights, and for expenses incident to such acquisition, there is authorized to be appropriated, out of any funds in the Treasury not otherwise appropriated, a sum not to exceed $2,000,000 in any one fiscal year: Provided, That no part of such funds shall be used to acquire additional land outside of the exterior boundaries of Navajo Indian Reservation for the Navajo Indians in Arizona, nor in New Mexico, in the event that legislation to define the exterior boundaries of the Navajo Indian Reservation in New Mexico, and for other purposes, or similar legislation, becomes law.

25 U.S.C. § 465.

 In essence, Plaintiffs argue that the intelligible principle that guides the Secretary's authority

to take land into trust is Congress' allotment of the two million dollar amount.  Such a view is

inconsistent with the statute and, implicitly, the views of the federal courts that have examined the

statute.  First, the statute provides for means other than the allotment of federal funds to take land

into trust.  Second, as discussed above, the IRA's intelligible principle, which has been found

sufficient to pass constitutional muster, is that of providing Indians with lands to enable self-support

and mitigate the harms of past policies.  The Congressional allotment simply does not, and need not,

impose the element of guidance that prevents § 465 from allowing unlimited discretion on the part

of the Secretary, for that element is found elsewhere in the statute.  As the Eighth Circuit wrote in

response to similar assertions:

> The State argues that these claimed textual limitations are artificial because any

acquisition could be seen as "for Indians," regardless of who else it harms.  Likewise, because most of the land currently taken into trust has been previously purchased by a tribe, the limit on appropriated funds for purchasing land is irrelevant.  We disagree that these limitations were meaningless when the IRA was enacted, and we conclude that the context of the entire act and its legislative history continue to give meaning to the phrase "for the purpose of providing land for Indians."

South Dakota II, 423 F.3d at 798.

The argument that Defendants have unreasonably applied their delegated power is, of course, quite different than the argument that the delegation directed by a statute lacks constitutionally adequate guidance.  The Court addresses here only the Plaintiffs' non-delegation claim, per the Motion to dismiss brought by Defendants.  For the reasons given above, the portion of Plaintiffs' challenge to the fee-to-trust action of the Secretary which is predicated on non-delegation grounds shall be dismissed.

*iii. Civil Rights Claims*

Defendants seek to dismiss claims five, six and seven of Plaintiffs' Complaint for failing to state a claim for which relief can be granted.  These claims allege violations of 42 U.S.C §§ 1981, 1983 and 1985.  Specifically, the fifth claim asserts that the "action by the defendants will subject persons of Oneida Indian descent to tribal laws that do not the constitutional rights enjoyed by their white neighbors in violation of 42 U.S.C. § 1981. . . [and that] persons of Oneida descent will again become wards of the federal government after being treated as full citizens of New York and the United States for more than 150 years."  Compl. at 28.  The sixth claim argues that the Secretary's actions towards the OIN constitute "invidious racial discrimination by the defendants in violation of 42 U.S.C. § 1983 against all other residents in Oneida and Madison Counties."  Id. at 30.  Lastly, the

seventh claim alleges that the Secretary's determination is part of a "scheme [that] violates the equal protection rights of all non-Indian citizens of New York." Id. at 32.  All three claims, then, variously assert that the DOI engaged in racially discriminatory action when it took land into trust for the OIN pursuant to Section 465.

In alleging racial discrimination against both persons of Oneida descent and against non-Indian residents of New York, the Plaintiffs make a fundamental error, which is fatal to each of their claims.  The very conduct with which Plaintiffs find fault, namely the federal government's singling out of, and express actions taken to benefit, the OIN, is not the type of conduct which is cognizable under the named sections because the conduct does not constitute racial discrimination.  "[F]ederal regulation of Indian affairs is not based upon impermissible classifications.  Rather, such regulation is rooted in the unique status of Indians as a separate people with their own political institutions.  Federal regulation of Indian tribes, therefore, is governance of once-sovereign political communities . . . ." United States v. Antelope, 430 U.S. 641, 646 (1977) (citation and quotations omitted).  In Morton v. Mancari, 417 U.S. 535, 553 n.24 (1974), the Court explained that a "preference is not directed towards a 'racial' group consisting of 'Indians'; instead, it applies only to members of 'federally recognized' tribes.  This operates to exclude many individuals who are racially to be classified as 'Indians.'  In this sense, the preference is political rather than racial in nature." To equate racial discrimination with the special treatment of Indians would have consequences that are hard to overstate.  The Morton Court, in rejecting a claim that sought to make such an equation, considered that "if these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 U. S. C.) would be effectively erased and the solemn commitment of the Government toward

13

the Indians would be jeopardized." Id. at 552.  Thus, for these reasons, it has been long-settled that

the fact that the federal government deals directly and especially with Indians on the basis of their

tribal status does not present an instance of racial discrimination.  "As long as the special treatment

can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such

legislative judgments will not be disturbed." Id. at 555.

Given this legal framework, the acceptance of land into trust for the OIN cannot be deemed a

racially discriminatory act.  It is apparent that the Secretary, pursuant to § 465, accepted the

contested land to facilitate a tribal land base for the OIN, consistent with the purpose and operation

of the IRA.  Accordingly, there is no question that the Secretary's determination can be "tied

rationally to the fulfillment of Congress' unique obligation toward the Indians." Id.  Therefore, to

the extent that Plaintiffs' claims under 42 U.S.C §§ 1981, 1983 and 1985 do not allege valid

instances of racial discrimination, they are not claims for which relief may be granted, and must be

dismissed.

   *a. § 1981*

Plaintiffs contend that the Secretary's determination to take land into trust impairs the rights

of persons of Oneida-descent, suggesting that the trust decision will render such persons "wards" of

the state or otherwise deprive them of constitutional rights in violation of § 1981.  There is no merit

to this argument.  Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every
> State and Territory to make and enforce contracts, to sue, be parties, give evidence, and
> to the full and equal benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C § 1981(a).  Though not explicitly mentioning race, the section has been construed to

14

forbid racial discrimination.  See St. Francis College v. Al-Khazari, 481 U.S. 604, 609 (1987).  This element of discrimination is absent from Plaintiffs' claim.  As explained above, it is definitively not a racially discriminatory act for the DOI to single out and take land into trust for the OIN.  Further, the alleged harms which Plaintiffs assert are caused by the act of taking land into trust are non-existent.  The fee-into-trust decision cannot be viewed as inflicting an injury on persons of Oneida descent because, assuming that the trust decision could somehow be regarded as injurious to those OIN members whose land was put into trust, membership in the tribe is voluntary for persons of Oneida descent, and the trust action has no impact on the rights of persons of Oneida descent as citizens of the United States and New York State.  See Thmpson v. County of Franklin, 180 F.R.D. 216, 225 (N.D.N.Y. 1998) (explaining that tribal membership is bilateral in that an Indian is free to terminate membership).  In failing to claim a cognizable injury under § 1981 or to claim an injury that is caused by the challenged decision, Plaintiffs' claim under the section must be dismissed for lack of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (stating that the constitutional minimum of standing includes, *inter alia*, that s plaintiff must have suffered an "injury in fact," meaning an invasion of a legally protected interest, and that a causal connection exists between the injury and the conduct complained of).  On the basis of the foregoing discussion, Plaintiffs fail to state a claim under § 1981 for which relief may be granted, and their fifth claim is dismissed.

> *b. § 1983*

Plaintiffs' § 1983 claim alleges that the Secretary's decision is an act of racial discrimination towards non-Oneida residents of areas surrounding the land taken into trust.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To adequately allege a claim under the statute, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  In the instant case, however, Plaintiffs fail to allege either the violation of a constitutional right or that such a violation was committed by a state actor.  First, as already explained, federal actions that single out, and are taken on behalf of, recognized Indian tribes do not constitute racial discrimination.  See generally Morton, 417 U.S. at 553-555.  Second, Plaintiffs do not name as defendants any state actors or describe conduct by persons acting under color of state law; the trust decision represents federal action, which § 1983 does not afford a vehicle to challenge, and the named officials are federal actors.  Plaintiffs thus fail to state a claim under § 1983 for which relief may be granted, and their sixth claim is dismissed.

   *c. § 1985*

   Plaintiffs allege that the land into trust decision results from a scheme in violation of 42 U.S.C. § 1985(3), which codifies a cause of action for conspiracy to interfere with civil rights or privileges.  To state a claim under this section, a plaintiff must allege: a conspiracy; for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and an act in furtherance of the conspiracy; whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United

16

States.  United Brotherhood of Carpenters & Joiners Of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).  It is necessary that the conspiracy be motivated by some class-based, invidiously discriminatory animus.  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Once again, Plaintiffs' claim is fundamentally deficient because federal action taken with respect to and on behalf on recognized Indian tribes does not constitute discrimination, racial or otherwise.  Accordingly, Plaintiffs' seventh claim must be dismissed for failing to state a claim for which can be granted.


*iv. NEPA Claim*

Defendants move to dismiss Plaintiffs' fourth claim, which alleges that the Secretary's trust determination was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law based on alleged failure to adequately assess the environmental impacts as required by the National Environmental Policy Act ("NEPA").  Plaintiffs thus seek review of the DOI's Record of Decision under the Administrative Procedures Act ("APA").  See 5 U.S.C. §§ 704, 706.  Defendants challenge the Plaintiffs' standing to obtain this review on the basis of the allegations contained in the Complaint.  It is argued that the NEPA claim should be dismissed because Plaintiffs do not actually allege any environmental injury which would place them within the zone of interests protected by NEPA.

The Court finds that Defendants' Motion to dismiss the fourth claim must be granted, as neither the Complaint nor Plaintiffs' Response can be understood to allege that the challenged action will cause Plaintiffs environmental, as opposed to economic, harm.  The APA confers a right to seek injunctive relief on those persons adversely affected or aggrieved by final "agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Plaintiffs suing under the APA for a

violation of NEPA must therefore allege, in addition to facts that show constitutional standing, that the injury allegedly suffered falls within the "zone of interests" that the statute was designed to protect; that is, the prudential element of standing meant by "zone of interests" is a necessary element of standing for the kind of administrative challenge that Plaintiffs bring here. See Lujan v. National Wildlife Federation, 497 U.S. 871, 883 (1990) ("plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint").

Congress enacted NEPA in order to "encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources . . . ." 42 U.S.C. § 4321.  In keeping with this purpose, the zone of interests for NEPA has been construed to encompass claims for harms to the recreational use, aesthetics, or well-being of the human environment.  National Wildlife Federation, 497 U.S. at 866.  However, the function of 42 U.S.C. § 4332 is "sounded by the adjective 'environmental': NEPA does not require the agency to assess every impact or effect of its proposed action, but only the impact or effect on the environment."  Metro. Edison Co. v. People Against Nuclear Energy, 460 U.S. 766, 772 (1983).  The Metro. Edison Court further explained that: "if we were to seize the word 'environmental' out of its context and give it the broadest possible definition, the words 'adverse environmental effects' might embrace virtually any consequence of a governmental action. . . [but] the context of the statute shows that Congress was talking about the physical environment -- the world around us, so to speak."  Id.  Thus, allegations of economic injury

18

alone, without something more to bring plaintiffs within the zone of interest of NEPA, is insufficient to raise a challenge under the statute.  See, e.g., Sabine River Auth. v. United States Dep't of Interior, 951 F.2d 669, 676 (5th Cir. 1992); Douglas County v. Babbit, 49 F.3d 1495, 1499 (9th Cir. 1995).  Additionally, the case primarily cited by Plaintiffs in support of their contention that economic injury suffices to bring them within the zone of interests is inconsistent with such a position; TOMAC v. Norton, 193 F. Supp. 2d 182, 188 (D.D.C. 2002), found standing where "members who live within a few blocks of the casino site assert interests in viewing local wildlife, walking in their neighborhood, and enjoying their own properties that are at risk of injury from a 24-hour-a-day casino attracting 4.5 million customers per year. . . [and the] fact that other TOMAC members assert economic injury from the competition they expect from casino restaurants and related businesses does not negate their standing to sue under NEPA."  In TOMAC, then, standing rested upon the allegation of environmental injury, not alleged economic injury.

        The harms alleged by Plaintiffs are exclusively economic or political in nature.  The Complaint and Response speak of "justifiable expectations," "economic devastation," "higher taxes," OIN compliance with "state and local laws," an "uneven playing field," and a "high cost of living."  Dkt. No. 1 at 23-27; Dkt. No. 40 at 27-21.  With regard to environmental injury, Plaintiffs do no more than make the conclusory statement that implementation of the land to trust decision would cause "permanent and irreparable harm to the environment, including the human environment."  Compl. at 3.  This is insufficient for purposes of standing.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.  Defenders of Wildlife, 504 U.S. at 561 (quotations omitted).

Plaintiffs lack even general factual allegations that would bring Plaintiffs within the zone of interests for their NEPA challenge, and the claim is therefore dismissed.

*v. IGRA Claim*

Plaintiffs' third claim appears to challenge the lawfulness of the operation of OIN's casino at Turning Stone, a Class III gaming facility, on the basis that it does not comply with § 20 of the Indian Gaming Regulatory Act ("IGRA").  25 U.S.C. § 2719.  Section 20 proscribes or otherwise regulates gaming on trust land unless, *inter alia*, "such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988."  25 U.S.C. § 2719(a)(1).  Defendants move to dismiss Plaintiffs' claim on the basis that it fails to state a claim because § 20, by its express terms, does not apply to the Turning Stone facility because it is located within the boundaries of the OIN reservation as they existed on October 17, 1988.  Because the facility is so located, Defendants argue the consultation and procedures outlined in § 2719(b)(1) that may allow gaming on trust land outside the boundaries of reservation are irrelevant to the DOI's land into trust action in the instant case.

Defendants' contentions are correct as to the status of the Turning Stone facility in relation to Section 20.  Sherrill clearly did not operate to disestablish the OIN reservation; indeed, it stated that "only Congress can divest a reservation of its land and diminish its boundaries."  Sherrill, 544 U.S. at 216 n.9 (quoting Solem v. Bartlett, 465 U.S. 463, 470 (1984)).  It is undisputed that Congress has not divested the OIN of its reservation.  In Oneida Indian Nation of New York v. Madison County, 401 F. Supp. 2d 219 (N.D.N.Y. 2005) (Hurd, J.), Madison County unsuccessfully argued that relying upon the Second Circuit's holding in Oneida Indian Nation of New York v. City

20

of Sherrill, New York, 337 F.3d 139 (2d Cir. 2003) that the Oneida reservation was not

disestablished is contrary to the Supreme Court's decision in Sherrill, which reversed the Second

Circuit's decision on other issues.  Judge Hurd concluded that, because the Supreme Court

"explicitly declined to decide whether the Second Circuit erred in determining that the reservation

was disestablished . . . the Second Circuit holding that the reservation was not disestablished

remains undisturbed."  Oneida, 401 F. Supp. 2d at 231.  This Court agrees that the Second Circuit's

opinion in Oneida Indian Nation that the OIN reservation has not been disestablished remains

binding precedent on this Court, and that Sherrill provides no basis on which to find Plaintiffs'

IGRA claim valid.  Accordingly, without reaching the issue of waiver of sovereign immunity for

challenges made pursuant to IGRA, Plaintiffs' IGRA claim is dismissed.


**C.  Motion to Dismiss Claims in Amended Complaint**

Defendants move to dismiss several claims from the Amended Complaint filed by Plaintiffs

CNYFBA, CERA, and Hennessy (collectively, "Plaintiffs" in this section).  The claims fall into two

categories: those identical or substantially similar to claims that Defendants addressed in their

Motion to dismiss with respect to the initial Complaint, and those that are new or sufficiently

different to require further argument by Defendants.  In the former category are Plaintiffs' civil

rights claims made pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, as well Plaintiffs' NEPA

challenge.  Plaintiffs have included a claim under § 1986, which hinges on a valid §1985 claim.

Plaintiffs have also substituted a "separation of powers" claim in place of the Tenth Amendment

and non-delegation claims contained in the initial Complaint.  In the latter category, Plaintiffs

challenge the December 20, 2008 agency action in which the GSA transferred and the DOI accepted

18 acres of excess federal land, pursuant to under 40 U.S.C. § 523, to be held in trust for the OIN.

*i. Civil Rights Claims & NEPA Claim*

Plaintiffs' claims made on the basis of §§ 1981, 1983, 1985 and 1986 (claims five through eight) must each be dismissed for failing to state a claim for which relief may be granted.  As the Amended Complaint contains no allegations that can remedy the fundamental defects in Plaintiffs' §§ 1981, 1983 and 1985 claims, the Court dismisses those claims on the same grounds as discussed at length above in subsection iii.  Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so."  Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (quotations omitted).  It necessarily follows that because Plaintiffs do not state a valid claim under § 1985, they likewise fail to state a valid claim under § 1986.  For the reasons given in subsection iv., Plaintiffs do not have standing to bring their NEPA challenge (claim one). The Amended Complaint offers no new allegations of environmental harm that would suffice to bring Plaintiffs' challenge within the zone of interests protected by NEPA, and therefore Plaintiffs' NEPA claim must be dismissed.

*ii. Separation of Powers Claim*

In their fourth claim for relief, Plaintiffs argue that the land into trust determination "violates the separation of powers between the federal branches and between the federal government and the states known as federalism."  Plaintiffs' allegation in support of this claim are exceedingly scattered and vague, but the Court infers that Plaintiffs assert that some constitutional defect exists in the

22

exercise of authority by the Secretary in taking the land into trust for the OIN.  This argument parallels the Tenth Amendment and non-delegation challenges which the Court discussed and dismissed in subsections i-ii.  As explained, the Indian Commerce Clause commits plenary authority over Indian affairs to Congress, and, in turn, Congress enacted the IRA with an intelligible principle that guides the Secretary of the DOI's exercise of authority under the IRA.  Given this arrangement of authority between coordinate branches of the federal government, there is no violation of the principle of separation of powers in the Secretary's determination under the relevant statutes, a principle which has been identified as often "a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other."  Mistretta v. United States, 488 U.S. 361, 382 (1989) (quoting Buckley v. Valeo, 424 U.S. 1, 122 (1976)).  "[T]he separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches. . . [and s]o as long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'"  Mistretta, 488 U.S. at 372 (quoting J. W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)).  Accordingly, Plaintiffs' separation of powers claim is dismissed.

*iii. 40 U.S.C. § 523 Claim*

Defendants move to dismiss Plaintiffs' challenge to the DOI's December 30, 2008 acknowledgment of administrative custody over an 18 acre land parcel, which was previously an annex to the Griffiss Air Force Base and which the GSA transferred pursuant to 40 U.S.C. § 523.  That statute imposes certain requirements on both the GSA and the DOI.  It provides, in relevant

part:

> The Administrator of General Services *shall* prescribe procedures necessary to transfer to the Secretary of the Interior, without compensation, excess real property located within the reservation of any group, band, or tribe of Indians that is recognized as eligible for services by the Bureau of Indian Affairs . . . . [T]he Secretary shall hold excess real property transferred under this section in trust for the benefit and use of the group, band, or tribe of Indians, within whose reservation the excess real property is located.

40 U.S.C. § 523 (emphasis added).  In other words, any excess real property within the borders of a recognized Indian tribe must be transferred to the Secretary to be held in trust for the benefit of that Indian group.  Section 523 thus mandates that tracts of land shall be transferred from one federal agency to another federal agency if they meet certain qualifications.

Plaintiffs' challenge to the DOI's acknowledgment of administrative custody must be dismissed for lack of standing.  "[T]he threshold issue of standing [is] 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" Horne v. Flores, ___ U.S. ___, 129 S. Ct. 2579, 2592 (2009) (quoting Defenders of Wildlife, 504 U.S. at 560 (1992)).  The constitutional minimum for standing to sue includes demonstrating: an injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest;' causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.  W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP, 549 F.3d 100, 106-07 (2d Cir. 2008) (citing Defenders of Wildlife, 504 U.S. at 560-61).

Plaintiffs fail to allege an injury-in-fact, much less causation, sufficient to demonstrate their standing.  Indeed, Plaintiffs simply do not indicate how the DOI's acceptance of custody of land which has been transferred from a different federal agency and owned by the federal government for

24

decades inflicts any harm upon a legally protected interest they possess.  The Secretary simply accepted land into trust in accord with the express mandate of Congress.  It appears that the essence of Plaintiffs' claim is political or jurisdictional, in that they assert a deprivation of "local self-governance."  Response at 8.  Whether or not such an allegation may ever state a valid claim, this allegation assuredly does not constitute an injury in the instant context.  State and local jurisdiction is already impaired, although by no means eliminated, by virtue of the federal government's ownership of the land; the transfer does not deprive Plaintiffs of any right which they previously had as citizens of New York State and as residents of the region.  The local self-governance interest of the Plaintiffs, setting aside whether it could be stated as concrete and particularized or meet prudential standing requirements, is unaffected by the transfer under § 523 and effectively non-existent.  This conspicuous absence of an injury is fatal to Plaintiffs' claim.

Further, as explained above in subsection v., Plaintiffs' argument that the OIN reservation is disestablished, such that the OIN may not have land taken into trust on their behalf under § 523 must be rejected.  The OIN remain a federally recognized tribe, and Congress has not disestablished their reservation.  Hence, the predicate of Plaintiffs' claim that § 523 cannot apply to the OIN is without merit.  For the foregoing reasons, Plaintiffs' challenge to the 18 acre transfer is dismissed.

**D.  Motion to Dismiss Complaints as Against Defendant Halbritter**

Defendant Halbritter moves to dismiss the Complaint and Amended Complaint against him, so as to cease being a party to the action.  Defendant Halbritter has been named as a party by Plaintiffs, with the designation "real party in interest."  This designation appears to derive from

Defendant Halbritter's status as a federally recognized leader of the OIN.  However, because of this status, Halbritter enjoys tribal sovereign immunity for actions taken in furtherance of conducting official Nation business.  See Shenandoah v. Halbritter, 275 F. Supp. 2d 279, 287 n.5 (N.D.N.Y 2003).  Further, Halbritter, even if sued in his individual capacity, is only stripped of immunity when he acts manifestly or palpably beyond his authority.  Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 359 (2d Cir. 2000).  In the instant case, it does not appear that Halbritter has actually been sued in either his individual or official capacity insofar as there are no allegations against him.  Nonetheless, reading the Complaint and Amended Complaint as an attempt to sue Halbritter, there is no question that tribal sovereign immunity insulates Halbritter from suit because of the absence of any indication of waiver of that immunity and the absence of any personal allegations that might state a claim.  In their briefing on this issue, Plaintiffs suggest inconsistent positions: "Mr. Halbritter is not a party to these proceedings;" "Plaintiffs have named Arthur Raymond Halbritter in his personal capacity as the real party in interest."  Dkt. No. 65 at 1; Dkt. No. 29 at 5.  Whatever argument Plaintiffs are seeking to advance as to the nature of their suit against Halbritter, the Court finds that it is without merit, and that there is no reason for Halbritter to remain a party to the instant action.  Federal Rule of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  The Court thus dismisses the initial and Amended Complaints as against Defendant Halbritter.

## III.    CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for partial dismissal of claims (Dkt. No. 21) in the

initial Complaint is **GRANTED** in its entirety; and it is further

**ORDERED**, that, within Plaintiffs' initial Complaint, Plaintiffs' Tenth Amendment claim;

non-delegation claim; NEPA claim; 42 U.S.C. § 1981 claim; 42 U.S.C. § 1983 claim; 42 U.S.C. §

1985 claim; and IGRA claim are each **DISMISSED;** and it is further

**ORDERED**, that Defendants' Motion for partial dismissal of claims (Dkt. No. 67) in the

Amended Complaint is **GRANTED** in its entirety; and it is further

**ORDERED**, that, within Plaintiffs' Amended Complaint, Plaintiffs' Separation of Powers

claim, claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986; NEPA claim, and challenge to

the December 30, 2008 transfer of 18 acres into trust are each **DISMISSED**; and it is further

**ORDERED**, that Defendants' Motions to dismiss the Complaint and Amended Complaint

(Dkt. Nos. 23, 63) as against Defendant Arthur Raymond Halbritter are **GRANTED**, such that Mr.

Halbritter is no longer a party to this suit; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties, including Mr.

Halbritter.

**IT IS SO ORDERED.**

DATED:      March 01, 2010
            Albany, New York

Lawrence E. Kahn
U.S. District Judge